UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HARRISON VARNES, individually and
on behalf of all others similarly situated,

                              Plaintiff,

     v.

APPLECARE SERVICE COMPANY, INC.,
and APPLE INC.,

                              Defendants.
-----------------------------------------------------------X

Case No. 1:24-cv-01007-NG

**AMENDED CLASS
ACTION COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff, Harrison Varnes ("Varnes" or "Plaintiff"), individually and on behalf of all others similarly situated, for his Amended Class Action Complaint against Defendants AppleCare Service Company, Inc. ("ACSC") and Apple Inc. ("Apple") (collectively, "Defendants"), based upon personal knowledge as to his own actions and based upon the investigation of counsel with respect to all other matters, alleges as follows:

## I.    INTRODUCTION

1. After suffering a cardiac arrythmia that led to a loss of consciousness, Plaintiff was implanted with an implantable cardioverter defibrillator ("ICD"). An ICD is a battery-powered device implanted in the chest which detects and stops arrhythmias. ICDs continuously check the heartbeat and will deliver an electric shock, if needed, to restore a regular heart rhythm.

2. Like an ICD, a pacemaker also helps control abnormal heart rhythms, but it uses frequent electrical pulses to induce the heart to beat at a normal rate. More than three million people in the United States are thought to have a conventional pacemaker and more than 300,000

1

are estimated to have an ICD.[1]

3. Apple designs, develops, and sells consumer electronics, computers, computer software, and online services. In the United States, Apple sells its products and services through its Apple.com website and, in addition to other authorized retailers, through its network of 273 retail Apple Stores operating in 45 states and territories.[2]

4. On August 11, 2021, Plaintiff purchased an Apple Watch from the Apple.com website. At the same time, Plaintiff also purchased from Apple a service, support, and repair contract called "AppleCare+ for Apple Watch." (AppleCare+"). Plaintiff agreed to pay for AppleCare+ via an automated monthly plan subscription and renewal; and he faithfully did so up through and including December 2023.

5. According to the AppleCare+ contract documents, ACSC is the contracting party, while Apple is the "Administrator" and "is responsible for the collection and transfer to AppleCare Service Company, Inc. of the purchase price for the Plan [the AppleCare+ contract] and for the administration of claims under the Plan."

6. Following a series of malfunctions, on December 12, 2023, Plaintiff sought service and/or repair of his Apple Watch under AppleCare+.

7. After Plaintiff disclosed to Defendant's employees and/or agents that he had an ICD implanted, Defendants refused to service his Apple Watch and continue to do so, claiming that Plaintiff's ICD made him an "unintended user" of the Apple Watch and AppleCare+.

---

[1] PETER M. SCHULMAN, MD, PERIOPERATIVE MANAGEMENT OF PATIENTS WITH A PACEMAKER OR IMPLANTABLE CARDIOVERTER-DEFIBRILLATOR 1 (2024). https://www.uptodate.com/contents/perioperative-management-of-patients-with-a-pacemaker-or-implantable-cardioverter-defibrillator

[2] ACSC appears to be a wholly owned subsidiary of Apple. ACSC's apparent function is to serve as the transferee of the subscription fees Apple receives for AppleCare+ contracts.

8. Apple has confirmed by subsequent letter to Plaintiff's counsel that its refusal to repair or service Plaintiff's Apple Watch under AppleCare+ was solely because Plaintiff has an ICD.

## II.   JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter presented by this Complaint under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), because it is a class action in which at least one member of the Class is a citizen of a State different from the Defendants, and the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges here that the total claims of individual Class members in this action exceed $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of New York, whereas ACSC is a citizen of Arizona and Apple is a citizen of California for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) and 144(a) because Plaintiff resides in this District, Defendants conduct and continue to conduct substantial and significant business in this District, including operating at least six Apple Stores, and a substantial portion of the conduct complained of herein occurred in this District.

## III.   PARTIES

11. Plaintiff Varnes is a citizen of the State and City of New York who resides in the Borough of Queens.

12. ACSC is an Arizona corporation with its principal place of business in Phoenix, Arizona.

13. Defendant Apple is a California corporation with its principal place of business in Cupertino, California.

### IV. BACKGROUND FACTS

#### A. The Apple Watch

14. The Apple Watch is a brand of "smartwatch" -- a wearable electronic device that has many of the same or similar functions and features as a smartphone. Numerous smartwatches incorporate a sensor to monitor cardiac activity. The Apple.com website describes the Apple Watch as "the ultimate device for a healthy life."



15. The Apple.com website specifically trumpets the Apple Watch's ability to alert users to [u]nusually high or low heart rates and irregular heart rhythms (known as arrythmias)."



16.     Further, the Apple.com website touts a software application ("app") for the Apple Watch called the "ECG app," which, once installed, makes the Apple Watch "capable of generating an ECG similar to a single-lead electrocardiogram." Apple boasts that the ECG app is "a momentous achievement for a wearable device that can provide critical data to doctors and peace of mind for you."



5

### B. Plaintiff's Apple Watch Purchase

17. On August 6, 2021, Plaintiff, then 31 years of age, suffered ventricular tachycardia (a type of cardiac arrythmia) that led to loss of consciousness and required emergency cardioversion. On August 11, 2021, Plaintiff was implanted with a Medtronic Aurora EV ICD to treat his arrythmia and prevent another cardiac event.

18. Following a diagnosis of non-ischemic cardiomyopathy and arrhythmogenic right ventricular dysplasia (ARVD,) and the implanting of his ICD, Plaintiff understandably wished to continuously monitor his cardiac activity. Plaintiff chose the Apple Watch for this purpose, ordering an Apple Watch Series 6 GPS + Cellular 44mm Gold from Apple.com from his hospital bed on the same day as his ICD implantation.

19. On information and belief, in purchasing an Apple Watch, Plaintiff joined tens of thousands of other Americans with ICDs and pacemakers who, with Apple's encouragement, use the Apple Watch to monitor their cardiac activity.

### C. Plaintiff's Purchase of AppleCare+ for Apple Watch

20. Apple Watches purchased in the United States are subject to a one-year limited warranty. In addition, Apple encourages Apple Watch purchasers to also purchase AppleCare+. AppleCare+ extends the warranty coverage on the Apple Watch and provides repair, service, and support for both the Apple Watch hardware and the installed software. Apple tells customers that AppleCare+ is "[s]ervice and support from the people who know your Apple Watch best."

6



21. Apple specifically refers to AppleCare+ as "coverage" and offers both fixed-term plans of two to three years for a single fee, currently ranging from $49 to $149, or monthly plans in which monthly payments are automatically deducted from or charged to customers' forms of payment. So long as the monthly payments are made, the coverage "automatically renews."

| Protect your Apple Watch | AppleCare+ You can buy coverage on a fixed-term plan or on a monthly plan that will automatically renew until cancelled. | | |
|---|---|---|---|
| | Monthly | 2 yrs | 3 yrs |
| Apple Watch Ultra 2 | $4.99 | $99 | — |
| Apple Watch Series 9 | $3.99 | $79 | — |
| Apple Watch SE | $2.49 | $49 | — |
| Apple Watch Hermès | $4.99 | — | $149 |

22. Plaintiff purchased AppleCare+ from Apple.com at the same time as his Apple Watch purchase, utilizing the monthly plan option. Plaintiff continued to pay for AppleCare+ via

7

the automated monthly plan subscription renewal, up through and including December 2023. The monthly fee for the plan was $4.34, including sales tax.

23. The AppleCare+ form contract provides:

<u>3.1 Hardware Services for Defects or Consumed Battery ("Hardware Service")</u>

If during the Plan Term, you submit a valid claim by notifying Apple that a defect in materials and workmanship has arisen in the Covered Equipment or, in relation to Covered Equipment which uses an integrated rechargeable battery, where the capacity of the Covered Device's battery to hold an electrical charge is less than eighty percent (80%) of its original specifications, Apple will either: (i) repair the defect at no charge, using new parts or previously used genuine Apple parts that have been tested and pass Apple functional requirements, or (ii) exchange the Covered Equipment with a replacement product that is new or comprised of new and/or previously used genuine Apple parts and has been tested and passed Apple functional requirements.

All replacement products provided under this Plan will at a minimum have the same or substantially similar features (e.g., a different model with the same features, or the same model in a different color) as the original product. If Apple exchanges the Covered Equipment, the original product becomes Apple's property and the replacement product is your property with coverage effective for the remainder of the Plan Term. Apple may use Covered Devices or replacement parts for service that are sourced from a country that is different from the country from which the Covered Device or original parts were sourced.

<u>3.2 Services for Accidental Damage from Handling ("ADH Service")</u>

If during the Plan Term you submit a valid claim by notifying Apple that the Covered Device has failed due to accidental damage from handling resulting from an unexpected and unintentional external event (such as, drops and damage caused by liquid contact) ("ADH"), Apple will, subject to your payment of the service fee described below, either (i) repair the defect using new parts or previously used genuine Apple parts that have been tested and pass Apple functional requirements, or (ii) exchange the Covered Device with a replacement product that is new or comprised of new and/or previously used genuine Apple parts and has been tested and passed Apple functional requirements. **Exclusions apply as described below.**

Each time you receive service for ADH is a "Service Event."

**You are eligible to receive unlimited Service Events for your Covered Device while the Plan is active, up to the date the Plan is cancelled or otherwise terminated. Requests for Service Events submitted and received by Apple**

8

**after the Plan has been cancelled or terminated will not be covered by the Plan.**

. . .

3.3 Technical Support

During the Plan Term, Apple will provide you with priority access to telephone and web-based technical support for Covered Equipment ("Technical Support"). Your Technical Support starts on expiration of the complimentary technical support provided by Apple, which starts on the date you purchase the Covered Equipment. Technical support may include assistance with installation, launch, configuration, troubleshooting, and recovery (excluding data recovery), including storing, retrieving, and managing files; interpreting system error messages; and determining when hardware service is required or ADH coverage may be applicable. Apple will provide support for the then-current version of the supported software, and the prior Major Release. For purposes of this section, the term "Major Release" means a significant version of software that is commercially released by Apple in a release number format such as "1.0" or "2.0" and which is not in beta or pre-release form.

Apple Technical Support is limited to the following: (i) the Covered Equipment, (ii) the Apple-branded Operating System ("OS") and Apple- or Beats-branded software applications that are pre-installed on or designed to operate with the Covered Equipment ("Consumer Software"), and (iii) connectivity issues between the Covered Equipment, a laptop or desktop computer, a compatible television, or other compatible wireless device that meets the Covered Equipment's connectivity specifications and runs an operating system supported by the Covered Equipment.

24.    A copy of what is, upon information and belief, the latest version of the AppleCare+ contract is annexed hereto as Exhibit "A."

**D. Defendants Refuse to Service Plaintiff's Apple Watch because of Plaintiff's ICD**

25.    In late October 2023, Plaintiff began experiencing malfunctions with his Apple Watch, the display of the watch began randomly shutting off and the ECG app repeatedly failed. After multiple attempts to resolve these issues himself, on December 12, 2023, Plaintiff sought AppleCare+ service by telephone.

26.    After several conversations with the service team, Plaintiff was informed by Defendants' employees and/or agents that, because he had a defibrillator or pacemaker implanted,

9

he was "an unintended user" and Defendants would not repair or service his Apple Watch despite his purchase of, and continued payments for, AppleCare+ up through and including December 20, 2023.

27. Plaintiff was surprised to learn that his ICD purportedly made him "an unintended user," of his purchased Apple Watch and he sought intervention from more senior Apple Inc. employees and/or agents of Defendants in telephone conversations with AppleCare+ and/or Apple Support.

28. Plaintiff's entreaties were unsuccessful, and Defendants' employees and/or agents refused to repair, service or provide technical support for his watch despite acknowledging that he had a valid AppleCare+ contract.

29. In further conversations, one representative, "Jeffrey" at the "Agreements Team," volunteered a partial refund of the years of monthly payments Plaintiff had made for AppleCare+, and, on December 12, 2023, Plaintiff's method of payment received 11 separate refunds of $4.34, representing his AppleCare+ monthly payments to date for that year. At no time did Plaintiff agree that this refund would be in full satisfaction of his claims.

30. Plaintiff has received no further offers of compensation from Defendants for his two prior years of payments for AppleCare+, despite Defendants' admissions that it never intended to perform. Further, Plaintiff's Apple Watch has still not been repaired.

31. There is nothing in the AppleCare+ contract that suggests that AppleCare+ services are not available to Apple Watch customers with ICDs or defibrillators.

32. The AppleCare+ contract further provides:

(i) The terms of the Plan, including the original sales receipt of the Plan and the Plan Confirmation, shall prevail over any conflicting, additional, or other terms of any purchase order or other document, and constitute your and Apple's entire understanding with respect to the Plan.

10

33. On January 18, 2024, Plaintiff, by counsel, served a pre-suit notice and demand letter on Apple, formally notifying Apple of the breach of the AppleCare+ contract and demanding that Apple perform and/or provide compensation.

34. On January 26, 2024, Apple responded to Plaintiff's demand, confirming that it would not perform under the AppleCare+ contract because of Plaintiff's ICD and pointing to language in an obscure Apple.com legal "instructions for use" subdomain of the Apple website which merely instructs "DO NOT use with a cardiac pacemaker, ICDs or other implanted electronic devices." The language says nothing about Apple refusing to service an Apple Watch product under AppleCare+ merely because the Apple Watch user has a cardiac pacemaker or ICD.

## V.   CLASS ACTION ALLEGATIONS

35. <u>Class Definition</u>: Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All individuals with cardiac pacemakers or ICDs or other implanted electronic device that purchased an Apple Watch within the United States and who subscribed to AppleCare+ for Apple Watch (the "Class").

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest and Defendant's legal representatives, predecessors, succors, assigns, and employees. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

Plaintiff reserves the right to modify the Class definition after discovery is conducted.

36. <u>Numerosity</u>: The proposed Class is so numerous that individual joinder of all members is impracticable. There are at least thousands of individuals and likely tens of thousands with cardiac pacemakers, ICDs, or other implanted electronic devices that purchased an Apple Watch within the United States and that also entered into AppleCare+ contracts and either had

11

repair and/or service denied, or would have had repair and/or service denied had they volunteered to Defendants that they had cardiac pacemakers or ICDs.

37. <u>Common Questions of Law and Fact Predominate:</u>  There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Some of the common legal and factual questions include:

    a.    Did Defendants' form AppleCare+ contract with Plaintiff and the Class include a promise that Defendants would provide repair services and technical support?

    b.    Did Defendants' prior and continuing refusal to provide repair services and technical support to Plaintiff and the Class constitute a breach of the AppleCare+ contract?

    c.    Did Defendants' prior and continuing refusal to provide repair services and technical support to Plaintiff and the Class violate the implied covenant of good faith and fair dealing?

    d.    Did Defendants' conduct alleged herein constitute an unfair business practice in violation of California's Unfair Competition Law?

    e.    Does the AppleCare+ contract disclaim coverage for users with cardiac pacemakers and or ICDs?

    f.    What is the nature and extent of damages and other remedies to which Plaintiff and the Class may be entitled?

38. <u>Typicality:</u>  Plaintiff's claims and those of the Class all arise from the same course of conduct by Defendants and are based on the same legal theories. Plaintiff's claims are typical of Class members' claims.

39. <u>Adequacy of Representation:</u>   Plaintiff will fairly and adequately represent and


protect the interests of the Class. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted class actions against technology and consumer electronic products companies on numerous prior occasions.

40. <u>Superiority of Class Action:</u> Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' wrongful and unfair conduct alleged herein. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members. The relief sought by each individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not. Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The Class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the absence of material differences in the common laws upon which the Class members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

41. <u>Risk of Inconsistent of Varying Adjudication:</u> Class treatment is proper and this action should be maintained as a class action for the additional reason that separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct

for Google; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

42. <u>Action Generally Applicable to the Class as a Whole</u>:  Defendants, as the parties that may potentially oppose certification of the Class, have acted, or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief. The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts—Defendants' wrongful and unfair conduct as alleged herein.

## VI.     CHOICE OF LAW

43. California law governs the substantive legal issues in this case. Defendants' form contracts with Plaintiff and all Class members provide for the application of California law. *See* Exhibit A § 12(n).

## VII.    CAUSES OF ACTION

### COUNT 1
### <u>Breach of Contract</u>

44. Plaintiff incorporates by reference the preceding paragraphs.

45. Plaintiff and the Class have contracted with Defendants under the AppleCare+ contract.

46. AppleCare+ promised Plaintiff and the Class: "If during the Plan Term, you submit a valid claim by notifying Apple that a defect in materials and workmanship has arisen in the Covered Equipment . . . Apple will either: (i) repair the defect at no charge . . . or (ii) exchange the Covered Equipment with a replacement product . . . ." AppleCare+ also promised Plaintiff and the Class: "During the Plan Term, Apple will provide you with priority access to telephone and web-

14

based technical support for Covered Equipment ('Technical Support')."

47. Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the AppleCare+ contract. Defendants have obtained the full benefit of the bargain they struck with Plaintiff and the Class.

48. Defendants failed to perform their obligations under the contract by refusing to repair or exchange or provide technical support for Plaintiff's and the Class's Apple Watches as they were required to do under Paragraphs 3.1—3.3 of the AppleCare+ contract.

49. As a result of Apple's breaches of the AppleCare+ contract as alleged herein, Plaintiff and the Class have been damaged, including but not limited to: (a) not receiving a complete refund of all payments made to Defendants for AppleCare+ and (b) not having their Apple Watches repaired or exchanged and/or not receiving technical support.

50. Absent an order requiring Defendants to specifically perform their contractual promises to repair or exchange defective Apple Watches and to provide promised technical support, Plaintiff and the Class will continue to suffer harm.

## COUNT 2
## Breach of the Implied Covenant of Good Faith and Fair Dealing

51. Plaintiff incorporates by reference the preceding paragraphs.

52. California law imposes upon each party to a contract the duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

53. Subterfuges and evasions violate the obligation of good faith in performance of contracts even though the actor believes his conduct to be justified. Fair dealing may require more

15

than honesty. Evasion of the spirit of the bargain and abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

54. To the extent that Defendants' AppleCare+ contract with Plaintiffs and the Class could be read as granting Defendants discretion to deny repair or exchange and/or technical support to Plaintiff and the Class, which Plaintiff does not concede, that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

55. Defendants have violated the covenant of good faith and fair dealing by their conduct as alleged herein.

56. By its conduct alleged herein, Defendants have abused any discretion they had under the AppleCare+ contract, if any, regarding their obligations to repair or exchange and/or provide technical support. Defendants' conduct in refusing to repair or exchange and/or provide technical support to Plaintiff and the Class, defied those customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms and bargain of the parties' contract. Defendants' conduct alleged herein was arbitrary and in bad faith.

57. Defendants' conduct as alleged herein has had the effect, and the purpose of, denying Plaintiff and the Class the full benefit of their bargains with Defendants.

58. By going back on their word regarding the promise to repair or exchange and/or provide technical support for Plaintiffs and the Class, Defendants have violated the spirit of the contract and breached the covenant of good faith and fair dealing. It simply was not acceptable for Defendants to lure Apple Watch customers into paying subscription fees for AppleCare+ by promising repair or exchange and/or technical support, only to breach that promise. Notably, there was no compelling need for Defendants to breach their promise, particularly as Apple makes

profits of almost $100 billion annually.

59. Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the AppleCare+ contract, or those obligations have been waived by Defendants. There is no legitimate excuse or defense for Defendants' conduct.

60. As a result of Defendants' breaches of the AppleCare+ contract, Plaintiff and the Class have been damaged, including but not limited to: (a) not receiving a complete refund of all payments made to Defendants for AppleCare+ and (b) not having their Apple Watches repaired or exchanged and/or not receiving technical support.

61. As a result of Defendants' breaches of the AppleCare+ contract alleged herein, members of the Class will continue to pay subscription fees for AppleCare+ contracts with which Defendants will refuse to comply if Class members disclose they have cardiac pacemakers or ICDs.

62. Absent an injunction enjoining Defendants from continuing their breaches, Plaintiff and the Class will continue to suffer harm.

### COUNT 3
### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

63. Plaintiff incorporates by reference the preceding paragraphs.

64. To the extent required, this cause of action is pled in the alternative.

65. Defendants' conduct described herein violates the "unfair" prong of California's Unfair Competition Law (the "UCL"), codified at California Business and Professions Code §§ 17200, *et seq.*, including without limitation by: (a) promising Plaintiff and the Class that they would receive repair or exchange and/or technical support for their Apple Watches if Plaintiff and the Class paid subscription fees for AppleCare+; (b) refusing to provide promised repair or exchange and/or technical support for Apple Watches to Plaintiff and the Class; and (c) justifying

17

that refusal by claiming after-the-fact that customers with cardiac pacemakers or ICDs were "unintended users" of Apple Watches.

66. Defendants' conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs and the Class. By its conduct alleged herein, Defendants have already improperly extracted at least several millions of dollars from customers in California and throughout the United States who are paying for repair or replacement and/or technical support that Defendants will refuse to provide when their customers most need it. There is no utility to Defendants' conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm caused by Defendants' conduct alleged herein.

67. By its conduct alleged herein, Defendants received money from Plaintiff and the Class that Defendants should not have received, including but not limited to subscription fees paid for AppleCare+ contracts.

68. As a direct and proximate result of Defendants' unfair conduct, Plaintiff and proposed Class members lost money that Plaintiffs and the Class have paid in subscription fees for AppleCare+.

69. Plaintiff and the Class lack an adequate remedy at law to recover the amounts they have paid Defendants for AppleCare+ to the extent those amounts (in part or in whole) are deemed not recoverable as damages under their breach of contract claims (for example if only a portion of the amounts paid were deemed recoverable under their breach of contract claims). The UCL gives courts broad equitable power to "make such orders or judgments … as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. As alleged, all amounts

paid to Defendants by Plaintiffs and the Class for AppleCare+ were and are amounts that Defendants acquired by means of their misconduct in violation of the UCL. All such amounts may properly be awarded as restitution under the UCL even in the event it is determined recoverable damages under their legal claims are more limited or damages are not available at all.

70. Plaintiffs and the Class lack an adequate remedy at law to obtain injunctive relief requiring Defendants to cease refusing to provide repair or replacement and/or technical support for Plaintiff and the Class's Apple Watches, to the extent the specific performance remedy for their breach of contract claims is determined to require anything less than such relief. The UCL gives courts broad equitable power to "make such orders or judgments…as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." Cal. Bus. & Prof. Code § 17203.

71. Plaintiff seeks an order granting restitution to Plaintiffs and the Class in an amount to be proven at trial, including for the amounts they have paid to Defendants in subscription fees for their AppleCare+ contracts.

72. Defendants' conduct has caused substantial injury to Plaintiffs and the Class. Defendants' conduct is ongoing and will continue absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Defendants from continuing the misconduct alleged herein, and ordering Defendants to honor their promise to provide repair or replacement and/or technical support for Plaintiff and the Class's Apple Watches.

73. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, requests that the

Court:

    a. Certify this case as a class action and appoint Plaintiff as Class Representative and Plaintiffs' counsel as Class Counsel;

    b. Order Defendants to pay damages and restitution to Plaintiff and the Class in an amount to be proven at trial;

    c. Award permanent injunctive relief as set forth herein;

    d. Order specific performance requiring Defendants to stop its violations alleged herein and to honor its promise of providing repair or replacement and/or technical support to Plaintiff and the Class;

    e. Order Defendants to pay attorneys' fees, costs, and pre-judgment and post-judgment interest; and

    f. Provide all other relief to which Plaintiff and the Class may show themselves justly entitled.

## IX. DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on his own behalf and on behalf of Class members on all issues so triable.

Dated: May 8, 2024                                     Respectfully submitted,

                                                                     *s/Darren T. Kaplan*

                                                                       Darren T. Kaplan (DTK 8190)
                                                                       KAPLAN GORE LLP
                                                                       346 Westbury Ave. Suite 200
                                                                       Carle Place, NY 11514
                                                                       (212) 999-7370
                                                                       dkaplan@kaplangore.com

                                                                       *Attorneys for Plaintiff*